**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **JOHN DIEFENBACH,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**M/V EAGLE RAY, UNDERWATER SAFARIS, INC.**<br><br>**Defendants.** | **Civil No. 16-39** |

**ATTORNEYS:**

**Ryan C. Meade**
**Claire Tagini**
Quintairo, Prieto, Wood & Boyer, P.A.
Miami, FL.
*For John Diefenbach,*

**Gaylin Vogel**
Law Office of Kevin F. D'Amour, PC
St. Thomas, VI
*For the defendants.*

**MEMORANDUM OPINION**

**GÓMEZ, J.**

Before the Court is the Motion of Underwater Safaris, Inc. and the M/V Eagle Ray to dismiss the Complaint in this action for failure to state a claim.

**FACTUAL AND PROCEDURAL HISTORY**

Underwater Safaris, Inc. ("Safaris") is a United States Virgin Islands corporation. In October, 2014, Safaris owned the M/V Eagle Ray (the "Eagle Ray"). John Diefenbach ("Diefenbach") alleges that he worked on the Eagle Ray in October, 2014. It is unclear what Diefenbach's duties were on the Eagle Ray. At some time while on the Eagle Ray, Diefenbach was injured.

On May 19, 2016, Diefenbach filed a Complaint in this Court. The Complaint includes five Counts. Count I alleges Jones Act negligence. Count II alleges Unseaworthiness. Count III alleges Failure to Provide Maintenance and Cure. Count IV alleges a negligent failure to provide prompt medical attention to an injured seaman. Count V is for a maritime lien against the Eagle Ray.

On July 29, 2016, Safaris moved to dismiss the Complaint for failure to state a claim.

**DISCUSSION**

When reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint "in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010). The Court must accept as true all of the factual allegations contained in the complaint and draw all reasonable

inferences in favor of the non-moving party. *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004).

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

The Supreme Court in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A complaint satisfies the plausibility standard when the factual pleadings "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint which pleads facts "'merely consistent with' a defendant's liability ... 'stops short of the line between possibility and plausibility of

"entitlement of relief."'" *Id.* (citing *Twombly*, 550 U.S. at 557).

To determine the sufficiency of a complaint under the plausibility standard, the Court must take the following three steps[1]:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679).

**ANALYSIS**

Safaris argues that the Complaint in this matter should be dismissed because the Complaint relies solely on conclusory statements. The Court shall examine each Count in turn, grouping Counts that share similar elements insofar as analytically useful.

[1] *Iqbal* describes the process as a "two-pronged approach" but the Supreme Court took note of the elements a plaintiff must plead to state a claim before proceeding to its two-step approach. Accordingly, the Third Circuit has deemed the process a three step approach. *See Santiago*, 629 F.3d at 130.

**A. Counts I, III, and IV**

In Counts I, III, and IV, Diefenbach seeks relief for injuries he suffered as a seaman. Count I of the Complaint alleges Jones Act negligence. "To state a claim under the Jones Act, a plaintiff must allege (1) that he is a seaman under the Act; (2) that he suffered injury in the course of his employment; (3) that his employer was negligent; and (4) that his employer's negligence caused his injury at least in part." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 541 (4th Cir. 2012).

Count III alleges Failure to Provide Maintenance and Cure. "To recover for maintenance and cure, a plaintiff need show only that (1) he was working as a seaman, (2) he became ill or injured while in the vessel's service, and (3) he lost wages or incurred expenditures relating to the treatment of the illness or injury." *West v. Midland Enters., Inc.*, 227 F.3d 613, 616 (6th Cir. 2000). "The test to determine who qualifies as a seaman entitled to maintenance and cure is identical to the test for seaman status under the Jones Act." *Etu v. Fairleigh Dickinson Uni. W. Indies Lab., Inc.*, 635 F. Supp. 290, 295 (D.V.I. 1986).

Count IV alleges a negligent failure to provide prompt medical attention to an injured seaman. The negligent failure to

promptly provide maintenance and cure to a seaman is a separate claim from the simple provision of maintenance and cure. *See Jewell v. Ohio River Co.*, 431 F.2d 691, 692-93 (3d Cir. 1970).

Counts I, III, and IV each require that Diefenbach be employed by Safaris as a seaman.

> To qualify for seaman status, a worker must satisfy the following criteria:
> (1) he must have a more or less permanent connection with
> (2) a vessel in navigation and
> (3) the capacity in which he is employed or the duties which he performs must contribute to the function of the vessel, the accomplishment of its mission or its operation or welfare in terms of its maintenance during its movement or during anchorage for its future trips.

*O'Boyle v. United* States, 993 F.2d 211, 213-14 (11th Cir. 1993)(dismissing a plaintiff's claims for failure to state a claim where the plaintiff's complaint did not establish that he was a seaman).

Underwater Safaris argues that

> Plaintiff simply concludes that he is a seaman covered by the act. His allegations amount to an "I say so" argument, i.e. I am a seaman because I say so.

*Br. In Supp. of Mot. to Dismiss*, ECF No. 15 at 3.

The Court has reviewed the Complaint. There are two paragraphs that arguably address the scope of Diefenbach's

employment status. Paragraph 11 concludes that Diefenbach is "a seaman and a member of the crew of the M/V EAGLE RAY."

> 11. In October of 2014, DIEFENBACH was employed by UNDERWATER SAFARIS, as a seaman and a member of the crew of the M/V EAGLE RAY.

*Compl.*, ECF No. 1 at 3 ¶ 11. Paragraph 13 concludes and presumes that Diefenbach's injury occurred while he was performing his duties as a crew member.

> 13. In October of 2014, DIEFENBACH was injured while in the service of M/V EAGLE RAY while performing his duties as crew member.

*Compl.*, ECF No. 1 at 3 ¶ 13.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As such, the Third circuit has cautioned that conclusions "are not entitled to the assumption of truth." *Santiago*, 629 F.3d at 130. An employee's status as a "seaman" under the Jones Act is a conclusion reached by applying a legal test to the facts presented by a party. *Etu*, 635 F. Supp. at 293 (listing the elements a plaintiff must establish to be a seaman under the Jones Act); *O'Boyle v. United* States, 993 F.2d at 213-14 (affirming a dismissal of a Complaint for failure to state a claim where the plaintiff had failed to allege facts establishing he was a seaman).

The allegations contained in paragraphs 11 and 13 of the Complaint do not provide underlying facts that, when taken to be true, would establish that Diefenbach was a seaman. The Complaint has no allegations that Diefenbach's employment had some degree of permanent connection with the Eagle Ray. There are no allegations that indicate the nature of, or the capacity with in which, Diefenbach was employed. At most, the Complaint includes one reference to Diefenbach's "diving duties." *See Compl.*, ECF No. 1 at 7 ¶ 21(a). In sum, other than pronouncing he is a seaman, Diefenbach has alleged no plausible facts that would allow the Court to infer that he is a seaman. As such, the statement that Diefenbach is a seaman is not entitled to the Court's acceptance as true. *See Iqbal*, 556 U.S. at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564-65 (2007) (disregarding statements that the defendants had entered into an agreement and contract as legal conclusions because of a lack of facts supporting the statements).

Because "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions," *Twombly*, 550 U.S. at 545, Diefenbach's conclusory allegation that he is a "seaman and member of the crew," *compl*. at 3 ¶ 11, is deficient. As such, Counts I, III, and IV will be dismissed for failure to state a claim.

**B. Count II**

Count II alleges unseaworthiness. "The doctrine of unseaworthiness basically imposes on a shipowner a nondelegable duty to provide seamen a vessel that is reasonably fit for its purpose; it is a species of liability without fault." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 40 F.3d 622, 631 (3d Cir. 1994) (internal quotations omitted).

> To establish a claim of unseaworthiness, the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used. This standard does not require that the vessel and equipment be perfect, but rather that they be reasonably suited for their purposes. In addition, the plaintiff must establish that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness.

*Mayne v. Omega Protein Inc.*, 370 F. App'x 510, 515 (5th Cir. 2010).

Safaris argues that, "[h]ere there is no factual allegation as to why the vessel was not seaworthy." *Br. in Supp. of Mot. to Dismiss*, ECF No. 15 at 5. Upon review of the Complaint, the Court has found allegations related to the unseaworthiness of Safari's vessel in paragraph 21. *Compl.*, ECF No. 1, at 7.

> a. The vessel was unsafe and unfit due to the conditions created by UNDERWATER SAFARIS as

> follows: 1) failing to properly train and supervise the DIEFENBACH while performing his duties as a diver; and/or 2) failing to warn DIEFENBACH of the potential dangers when working as a diver; and/or 3) failing to provide DIEFENBACH with the proper protective equipment while performing his diving duties; and/or 4) failing to provide the DIEFENBACH with adequate medical care by the ship's doctor or to timely evacuate the DIEFENBACH so as to aggravate DIEFENBACH's injuries and to make them worse.
>
> b. The vessel was not reasonably fit for its intended purpose;
>
> c. The vessel's crew was not properly trained, instructed, or supervised;
>
> d. The vessel did not have a fit crew;
>
> e. The vessel did not have the adequate manpower for the tasks at hand;

*Compl.*, ECF No. 1, at 7 ¶ 21.

The allegations in the Complaint that arguably provide a plausible factual basis to infer that the vessel was unseaworthy essentially only recite the cause of action and make a conclusion. For example, the allegation that Safaris failed to properly train and supervise is made without any support. Significantly, the Complaint is devoid of well pleaded facts that present a plausible basis from which entitlement to relief could rise. Indeed, similar statements have been dismissed by other courts as being conclusory. *Jankowski v. Lellock*, 649 F. App'x 184, 188 (3d Cir. 2016)("The entire claim is relegated to

a single sentence in the complaint, which simply states that Zangaro 'failed to properly train the teachers ... regarding the School District policy that forbade school police from removing children from classrooms for private, unsupervised encounters.' This is merely a rote recitation of a cause of action coupled with a legal conclusion. It does not contain *any* facts on which we can or should rely.")(internal citations omitted); *Canady v. Unified Gov't of Wyandotte Cnty./Kan. City, Kan.*, 68 F. App'x 165, 166 (10th Cir. 2003)("Appellant has done nothing more than make a conclusory allegation that 'these officers did not have the proper training or supervision, if they did they would have acted in Gross negligence.' Because Appellant has failed to allege facts . . . we affirm the district court's order dismissing this action."). As such, the allegations in paragraph 21 regarding a failure to train or supervise are not entitled to the assumption that they are true.

Similarly, with respect to Diefenbach's assertions that there was inadequate manpower for the tasks at hand and a lack of adequate protective equipment, Diefenbach does not provide in his Complaint any facts to support this statement. Again, similar statements about inadequacy have been rejected as conclusory when no foundation for those statements has been provided. *See Jones v. Burlington Cnty. Bd. Of Chosen*

*Freeholders*, 428 F. App'x 131, 134 (3d Cir. 2011)("Jones has not identified any deficiency in this treatment; instead, he has presented only the conclusory statement that the defendants did not 'provide adequate medical attention.'").

As for the final allegation of a failure to warn Diefenbach about the potential harms of diving, it is hard to conceive how such a statement relates to the shipowner's "nondelegable duty to provide seamen a vessel that is reasonably fit for its purpose . . . ." *Calhoun*, 40 F.3d at 631. Unseaworthiness claims are "claims that the work environment was intrinsically unsafe." *Bartel v. Alcoa S.S. Co., Inc.*, 805 F.3d 169, 174 (5th Cir. 2015). The allegation that Safaris failed to warn Diefenbach of the dangers of his profession does not allege the vessel itself was intrinsically unsafe. As such, this allegation does not help Diefenbach.

Having considered the allegations contained in Count II of the Complaint, the Court finds that all of the allegations that could potentially establish that the Eagle Ray was intrinsically unsafe are conclusory. As such, the Court shall disregard such statements. After disregarding such conclusory statements, there are no remaining facts that establish a violation of the "nondelegable duty to provide seamen a vessel that is reasonably

fit for its purpose . . . ." *Calhoun*, 40 F.3d at 631. As such, the Court will dismiss Count II of the Complaint.

**C. Maritime lien**

Count V requests a maritime lien against the Eagle Ray. "A maritime lien is a privileged claim upon maritime property, such as a vessel, arising out of services rendered to or injuries caused by that property." *In re World Imps. Ltd.*, 820 F.3d 576, 583 (3d Cir. 2016).

Diefenbach asserts he is entitled to a maritime lien against the Eagle Ray because of his "negligence and unseaworthiness" claims. *Compl*. at 11. The Court has already determined that the other Counts should be dismissed. As such, the Court will dismiss the request for a maritime lien as well.

An appropriate judgment follows.[2]

S___________________
**CURTIS V. GÓMEZ**
**District Judge**

---

[2] In his Response to the Motion to Dismiss, Diefenbach raises the possibility of curing his Complaint's deficiencies by filing an amended Complaint. *Resp. to Defs.' Mot. to Dismiss Compl.*, ECF No. 24 at 5. However, Diefenbach did not provide the Court with a draft Amended Complaint. In the context of a plaintiff arguing that a district court should have *sua sponte* provided the plaintiff with leave to amend its dismissed complaint, the Third Circuit explained that it had previously "held that a failure to submit a draft amended complaint is fatal to a request for leave to amend." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007)(listing Third Circuit precedent).